IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | No. 16 C 1877 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| DR. LOUIS SHICKER, *et al.*, | ) | Magistrate Judge Sidney I. Schenkier |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER[1]

On February 1, 2016, plaintiff, Kevin Smith, filed this lawsuit *pro se* and *in forma pauperis*, alleging that defendants – medical providers or supervisors at Stateville Correctional Center – were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment because they failed to take reasonable steps to provide him with appropriate and timely medical treatment (doc. # 6: Compl.). Counsel was shortly thereafter recruited to represent Mr. Smith on a *pro bono* basis (doc. # 5). Mr. Smith has now moved, pursuant to Federal Rule of Evidence 706(a), for this Court to appoint one or more neutral medical experts and apportion the costs "in the first instance" to defendants (doc. # 100: Pl.'s Mot. at 1). Defendants object to Mr. Smith's motion, and the motion is now fully briefed. For the following reasons, we deny Mr. Smith's motion.

I.

Rule 706(a) provides, in relevant part, that "[o]n a party's motion or on its own, the court may order the parties to show cause why expert witnesses should not be appointed." F.R.E. 706(a). The original 1972 advisory committee notes to Rule 706 indicate that its purpose was to address

---

[1] On October 3, 2016, pursuant to Local Rule 72.1, the district judge referred this case to this Court for the purpose of holding proceedings related to discovery supervision and settlement (doc. # 37).

"[t]he practice of shopping for experts, the venality of some experts, and the reluctance of many reputable experts to involve themselves in litigation . . ." *Id.* Rule 706 should be read in conjunction with Federal Rule of Evidence 702, which lists prerequisites for expert witnesses, including that "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." F.R.E. 702(a). *See Elcock v. Davidson*, 561 F. App'x 519, 524 (7th Cir. 2014).

Rule 706 does not identify the factors courts should consider in deciding whether to appoint an expert. The Seventh Circuit has upheld district court decisions not to appoint a Rule 706 expert in cases where inmates alleged deliberate indifference and the issues were "not so complicated" because they did not involve "probing, complex questions concerning medical diagnosis and judgment" and the plaintiff's symptoms "were not beyond a lay person's grasp." *Ledford v. Sullivan*, 105 F.3d 354, 359-60 (7th Cir. 1997). *See also Dobbey v. Carter*, 734 F. App'x 362, 365 (7th Cir. 2018) (upholding the district judge's decision to deny the plaintiff's request to appoint an orthopedic expert to opine on the plaintiff's knee problems because the court reasonably concluded that the case hinged on issues which were "comprehensible to a layperson"). The Seventh Circuit has also upheld a district court's decision not to appoint an expert where the plaintiff's evidence did not "contradict" or "conflict[]" with the defendants' diagnostic evidence. *Turner v. Cox*, 569 F. App'x 463, 468 (7th Cir. 2014). In *Turner*, the Seventh Circuit held that an appointed expert "would not have added to the understanding of the case." *Id.* On the other hand, the Seventh Circuit has stated that a court may appoint a neutral expert witness to address medical issues where the plaintiff was litigating under "profound handicaps." *Rowe v. Gibson*, 798 F.3d 622, 631-32 (7th Cir. 2015).

## II.

In explaining our decision not to appoint an expert witness pursuant to Rule 706, we begin with a brief review of some of the expert discovery that has occurred to date. That discovery involves evidence both from a treater and from retained experts.

On June 13, 2016, Mr. Smith was seen by a neurologist for the first time (doc. # 101: Pl.'s Mem. in Supp. of Mot. at 3). In his report of the examination, the neurologist, Konstantin Slavin, M.D., opined that Mr. Smith's primary complaints -- right-sided body and facial pain and left leg pain -- had anatomical correlation to spinal abnormalities shown in an MRI of Mr. Smith's lumbar spine, including moderate to severe foraminal stenosis (narrowing of disc space) (Pl.'s Mem., Ex. 5: Slavin 6/13/16 Report at 3). Dr. Slavin recommended Mr. Smith "would benefit from pain therapy and referral to pain physicians, including possible lumbar epidural injections as well as physical therapy" (*Id.*). Dr. Slavin opined that Mr. Smith "may eventually require lumbar decompression, but first he should try to control his symptoms with non-surgical means" (*Id.* at 1). Dr. Slavin requested an MRI of Mr. Smith's face and brain to evaluate his facial pain (*Id.* at 3).

On October 25, 2016, Mr. Smith underwent the requested brain MRI, and on March 27, 2017, he met with Dr. Slavin for a follow-up examination (Pl.'s Mem., Ex. 6: Slavin 3/27/17 Report). Dr. Slavin stated that the brain MRI "clearly show[ed] a large area of missing brain matter in the left frontal region," which led Dr. Slavin to conclude that Mr. Smith's chronic pain symptoms in the right side of his body "now seem to be more explained by the patient's brain situation" (*Id.* at 1). Dr. Slavin opined that Mr. Smith had a stroke in the "distant past," but it was "very hard to say" what type of a stroke (*Id.* at 1-2). Mr. Smith described to Dr. Slavin an episode in 2013 when for three to four days he could barely move or think straight, after which he started experiencing pain on his right side (*Id.*). Dr. Slavin said there was no surgical procedure that was

available to address the missing brain matter. He recommended that Mr. Smith undergo chronic pain treatment (*Id.* at 2). Because tramadol, Tylenol No. 3, and naproxen "do not seem to control his pain," Dr. Slavin recommended that Mr. Smith's doctors give him "other medications such as higher dose of gabapentin, pregabalin, or duloxetine" and "try some or all of them until good pain relief is achieved" (*Id.*).

Mr. Smith's counsel, and then defendants' counsel, served Dr. Slavin with subpoenas to appear at a deposition (Pl.'s Mem. at 3-4). On September 19, 2017, Dr. Slavin was deposed for one hour; defendants paid the costs associated with the deposition (doc. # 90: Defs.' Resp. at 2). Thereafter, on November 3, 2017, Mr. Smith disclosed Dr. Slavin as a non-retained expert witness under Federal Rule of Civil Procedure 26(a)(2)(C) (Pl.'s Mem., Ex. 10: Pl.'s Rule 26(a)(2) Disclosure). In that disclosure, Mr. Smith stated that he expected Dr. Slavin to testify, *inter alia*, that based on Mr. Smith's reports of pain, his doctors waited an unreasonable length of time to obtain MRIs of Mr. Smith's back and brain and to send Mr. Smith for epidural injections, which delayed Mr. Smith's diagnoses and caused him to suffer additional pain (*Id.* at 3-5). The disclosure also stated that Dr. Slavin was expected to testify that Mr. Smith's doctors should have offered him additional or different pain medications, and their failure to do so caused Mr. Smith to endure additional pain (*Id.*).

On January 2, 2018, defendants served their Rule 26(a)(2) disclosures, identifying two retained experts, David M. Mathis, M.D., and Andrew Zelby, M.D., and three non-retained experts, including Dr. Slavin (Pl.'s Mem. at 4-5). On March 27, 2018, Mr. Smith moved to depose defendants' retained experts at no cost and for the appointment of a neutral expert under Rule 706 (doc. # 84). The district judge granted the motion to depose defendants' experts at no cost, reducing their fee for the depositions, and denied without prejudice the motion for a Rule 706 expert (doc.

# 90). The retained expert depositions were completed by the end of July 2018, and on September 11, 2018, Mr. Smith filed the instant renewed motion for a court-appointed expert (doc. # 100).[2]

### III.

Mr. Smith asks the Court to appoint a neutral expert "skilled in spinal and traumatic brain injuries, such as a neurosurgeon or neurologist" who "could inform the court and jury on" issues including: whether Mr. Smith should have been evaluated by a neurologist before June 2016 based on his symptoms, whether a delay in diagnosing Mr. Smith's spinal and brain conditions caused him to endure increased pain and suffering, and whether defendants' care and treatment regime fell below the standard of care (Pl.'s Mem. at 11-12). He asserts that "[n]eutral expert testimony is necessary here in view of the complex medical issues at play, the conflicting evidence, and the imbalance presented by defendants retaining two expert witnesses (and identifying several non-retained expert witnesses) to contest Mr. Smith's Eighth Amendment deliberate indifference claim based on defendants' delays in diagnosing and in properly treating Mr. Smith's spinal and brain conditions, and the pain Mr. Smith continues to experience from his medical condition" (Pl.'s Mot. at 2). For the reasons that follow, we decline to appoint a Rule 706 expert.

### A.

While the medical issues in this case may be complex and the evidence may be conflicting, we find that adding a Rule 706 expert to the mix would not necessarily "add[] to the understanding of the case." *Turner*, 569 F. App'x at 468. Mr. Smith points out that Dr. Slavin and Dr. Zelby disagree on the degree to which Mr. Smith's right-side body pain correlates to his loss of brain

---

[2]As the district judge's denial of Mr. Smith's earlier Rule 706 motion was *without prejudice*, we reject summarily defendants' argument that the district judge "already . . . decided" the issue in the current motion (Defs.' Resp. at 1). Equally without merit is defendants' argument that Mr. Smith's motion for a court-appointed expert improperly seeks to "re-open expert discovery" (*id.*), as the district judge's order contemplated that Mr. Smith might renew his motion after the depositions of defendants' retained experts.

5

tissue (Pl.'s Mem. at 3, 5-6). In addition, Mr. Smith contends that while defendants' retained experts will testify that his doctors adequately and timely treated his symptoms, Dr. Slavin would testify that Mr. Smith's doctors unreasonably delayed properly diagnosing Mr. Smith's symptoms and provided him with inadequate treatment (*see Id.* at 5; Pl.'s Rule 26(a)(2) Disclosure at 3-5).

While Dr. Slavin and defendants' experts may indeed disagree on these matters, obtaining additional expert testimony likely will add to that conflict, but will not resolve it. In any event, "opposing experts offering conflicting views to the jury" are a common occurrence. *Baugh v. Cuprum S.A. de C.V.*, 845 F.3d 838, 850 (7th Cir. 2017). In such cases, "[i]t is within the province of the jury to determine which . . . contradictory expert statements is deserving of credit." *Id.* (quoting *Spesco, Inc. v. Gen. Elec. Co.*, 719 F.2d 233, 237-38 (7th Cir. 1983)). In other words, it is for the jury, not a court-appointed expert, to resolve this conflict.

In addition, a court-appointed expert is not needed to help the jury understand any complex medical evidence in this case. While another expert may provide more evidence for the jury to consider, the medical reports and deposition transcripts attached to the parties' briefing shows that there is already sufficient expertise in this case to explain or illuminate any complex medical issues to the jury.

**B.**

We also find that there is not such an "imbalance" in existing expert testimony that the appointment of a Rule 706 expert is warranted. Mr. Smith contends that the Court should appoint an expert because defendants have retained two expert witnesses "to contest Mr. Smith's Eighth Amendment deliberate indifference claim based on defendants' delays in diagnosing and in properly treating Mr. Smith's spinal and brain conditions, and the pain Mr. Smith continues to experience," while Mr. Smith cannot afford to retain one expert witness. However, it is not

uncommon for parties who do not have pauper status to nonetheless be so short of funds that they are unable to match the array of experts offered by their opponents. It surely is not the norm in such cases to appoint a Rule 706 expert. Mr. Smith's pauper status does not automatically entitle him to appointment of an expert at his opponent's expense.

Moreover, in this case, Mr. Smith is not litigating with the "profound handicaps" that the Seventh Circuit found the plaintiff labored under in *Rowe*, 798 F.3d at 631-32. Mr. Smith's attorney had the opportunity to depose Dr. Slavin, Mr. Smith's treating neurologist, on both of his medical reports and to question Dr. Slavin on his assessment of causation, the timing of Mr. Smith's MRIs and his associated diagnoses, and whether the course of treatment and Mr. Smith's symptoms would have differed if he had received the MRIs and correct diagnoses earlier. Mr. Smith's attorney deemed the information he obtained from the Slavin reports and deposition to be sufficiently helpful to disclose Dr. Slavin as an expert witness who will testify at trial, and to detail four pages of expected testimony from Dr. Slavin that he would use to advance Mr. Smith's case, including: whether defendants improperly delayed diagnosing Mr. Smith, improperly treated Mr. Smith's conditions, and caused Mr. Smith additional pain (Pl.'s Rule 26(a)(2) Disclosure at 2-5). This expected testimony covers the central matters Mr. Smith alleges are at issue in this case.

Nevertheless, Mr. Smith argues there is an imbalance between the experts because defendants' experts based their opinions in part on Mr. Smith's medical history at Stateville, but Dr. Slavin, a non-retained expert, had access to "only a snapshot of such history" (Pl.'s Mem. at 5). Mr. Smith does not contend that Dr. Slavin is not neutral or independent, but he argues that "even if Dr. Slavin were successfully subpoenaed to testify at trial and his payment requirements could be addressed by the court[,] it is not practical to have Dr. Slavin review and opine on Mr.

Smith's complete medical history from the witness stand" (Pl.'s Mot. at 2). Thus, Mr. Smith argues that the Court should appoint a neutral expert.

We disagree. It is always the case that a treater who is disclosed as a Rule 26(a)(2)(C) expert is limited to testimony about the facts and opinions derived from his or her experience treating the patient. *E.E.O.C. v. AutoZone, Inc.*, 707 F.3d 824, 833 (7th Cir. 2013) ("a treating physician can provide an expert opinion without submitting a written report if the physician's opinion was formed during the course of the physician's treatment, and not in preparation for litigation"). Asking the treater to review records beyond the scope of his treatment and to opine on them would convert the treater into a Rule 26(a)(2)(B) expert, from whom the more expansive written report set forth in that Rule would be required. *Meyers v. Nat'l R.R. Passenger Corp.*, 619 F.3d 729, 734-35 (7th Cir. 2010) (holding that "a treating physician who is offered to provide expert testimony as to the cause of the plaintiff's injury, but who did not make that determination in the course of providing treatment, should be deemed to be one 'retained or specially employed to provide expert testimony in the case,' and thus is required to submit an expert report in accordance with Rule 26(a)(2)"). So, the fact that Dr. Slavin has not reviewed all of Mr. Smith's medical records does not create an "imbalance" with defendants' retained experts. It simply reflects that they are different categories of experts, each with certain arguable strengths (Dr. Slavin is not affiliated with any party, and he actually examined Mr. Smith) and weaknesses (Dr. Slavin did not review every single record in Mr. Smith's medical history).[3]

---

[3]Moreover, if Mr. Smith's attorney was intent upon retaining an expert beyond Dr. Slavin, he could have redoubled his efforts to obtain a *pro bono* expert or to negotiate a reduced rate for an expert. Mr. Smith's attorney stated that he sought to secure a "*pro bono* neutral expert," but he gave up when his efforts identified three local physicians, none of whom would work free of charge (doc. # 103: Pl.'s Reply at 8). We note that the $700.00 hourly rate charged by one of these potential experts was less than half that charged by Dr. Slavin.

8

## IV.

In closing, we have several words of caution for defendants about certain arguments they have made. *First*, their argument that the provisions for expert witness compensation in Rule 706 permitting fee-shifting "conflict with controlling statutes," including "fee-shifting provisions . . . under the Prison Litigation Reform Act (42 U.S.C. § 1997e) and for prevailing civil rights parties under 42 U.S.C. § 1988" (Defs.' Resp. at 5), borders on frivolous. Defendants cite no legal authority for that proposition, and these federal statutes -- unlike Rule 706 -- apply to fee shifting *after* a verdict is reached. Indeed, defendants' argument flies in the face of Seventh Circuit law (described above) which says that we can appoint a Rule 706 expert, and apportion costs if necessary, before a verdict in a case.

*Second*, defendants' argument that "a manifest injustice would occur if Plaintiff is able to defray costs because of indigence caused by his own criminal conduct" (Defs.' Resp. at 6-7), crosses the line into the frivolous – and it is offensive. It is well-settled that under the Eighth Amendment, inmates (*i.e.*, individuals who have been incarcerated due to their criminal conduct) "have the right to humane conditions of confinement, and prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Daugherty v. Page*, 906 F.3d 606, 611 (7th Cir. 2018) (internal quotations omitted). Under defendants' rationale, it would be "manifest[ly] unjus[t]" under any circumstances to allow inmates to defray the costs of litigation -- through appointed counsel, experts, etc. -- in order to vindicate their constitutional rights. Of course, that is not the law. The Constitution protects the rights of the indigent as well as the wealthy.

## CONCLUSION

For the foregoing reasons, this Court denies plaintiff's motion for a court-appointed medical expert under Federal Rule of Evidence 706 (doc. # 100). The matter is set for a status hearing on December 11, 2018 at 9:00 a.m.

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

Dated: November 20, 2018